**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CURTIS BLACKWELL,**

      **Plaintiff,**

**v.**                                **CV-09-00377 MCA/WPL**

**JOHN DENKO, individually and in his official**
**capacity; FORREST SMITH, individually and**
**in his official capacity; TIM LABIER, individually**
**and in his official capacity; BEN STRAIN, individually**
**and in his official capacity; and State of New Mexico,**
***ex rel.* Department of Public Safety - Motor**
**Transportation Division, and Taxation & Revenue**
**Department - Motor Vehicle Division,**

      **Defendants.**

**DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**
**AND MEMORANDUM IN SUPPORT**

COME NOW Defendants John Denko, Forrest Smith, Tim Labier, Ben Strain, State of New Mexico *ex rel.* Department of Public Safety, Motor Transportation Division and Taxation & Revenue Department - Motor Vehicle Division ("Defendants") by and through their counsel of record, Sandenaw Law Firm, P.C. (T. A. Sandenaw, Jr. and Cody R. Rogers) and pursuant to Fed. R. Civ. P. 56(c), move for Summary Judgment as to each of Plaintiff's claims. As basis for such Motion, Defendants argue that Plaintiff's claims fail as a matter of law, that there is no material fact in dispute precluding summary judgment and that the individual Defendants are protected by qualified immunity. In support of their Motion Defendants state as follows:

**INTRODUCTION**

In this Motion for Summary Judgment, Defendants seek dismissal of each of the claims raised in Plaintiff's First Amended Complaint for Damages for Violation of Constitutional Rights and Request for Declaratory and Injunction to Relief ("First Amended Complaint"). Plaintiff's First

Amended Complaint alleges generally that Defendant Officer Ben Strain ("Officer Strain") selected Plaintiff's commercial motor vehicle ("CMV") for inspection and issued Plaintiff a citation for possession of alcohol in violation of federal and state law on August 15, 2008 at the Lordsburg Port of Entry ("POE") solely on the basis of Plaintiff's race, which is African-American/Black. *See* First Amended Complaint at page 3.

Plaintiff also alleges that Motor Transportation Division ("MTD") Officers manning the Lordsburg Port of Entry have consistently engaged in racial profiling or selective enforcement since at least 2005. *See* First Amended Complaint, pages 5-6. Plaintiff alleges that Officer Strain's actions towards him constitute a violation of his equal protection rights and that Defendants Denko, Smith, and Labier failed to adequately train, supervise, or discipline MTD Officers such as Officer Strain to prevent racial profiling. *See* Plaintiff's First Amended Complaint at Page 3-5, 7. Plaintiff further alleges that Officer Strain and the remaining individual Defendants' actions violated the New Mexico Tort Claims Act and the New Mexico Constitution, and seek declaratory and injunctive relief in the form of refunding Plaintiff for the penalty assessment he paid regarding the possession of alcohol citation, and a removal of the citation from his driving record. This request for declaratory relief is the sole count against Defendants State of New Mexico *ex rel*. Department of Public Safety and Tax & Revenue Department (hereinafter "Agency Defendants"). *See* Plaintiff's First Amended Complaint at Pages 8-9.

However, summary judgment is appropriate and Plaintiff's claims must be dismissed where the record, following the completion of full discovery in this matter, establishes no genuine issue of material fact to suggest that the actions of Officer Strain, the individual Defendants, or the agency Defendants violated any of Plaintiff's constitutional or civil rights. As such, Defendants are entitled to qualified immunity with regard to Plaintiff's claims. Additionally, Plaintiff cannot demonstrate

that the actions of any Defendant violated clearly established law and thus dismissal with regard to Plaintiff's claims is appropriate.

Accordingly, Defendants request an Order from this Court dismissing Plaintiff's claims.

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Defendant State of New Mexico *ex rel.* Department of Public Safety, Motor Transportation Division, operates a permanent port of entry on Interstate 10 in Lordsburg, New Mexico, in compliance with the regulatory scheme enacted by the State of New Mexico that generally requires commercial carriers entering or leaving New Mexico to stop at its ports of entry and authorizes MTD employees assigned to those ports of entry to inspect commercial vehicles and their drivers to determine whether vehicles, drivers, and cargo are in compliance with the relevant State and Federal laws regarding public safety, health, and welfare as it pertains to commercial motor vehicles. *See* NMSA 1978 § 65-5-1; Plaintiff's First Amended Complaint at Paragraph 9.[1]

2.      The Lordsburg Port of Entry, in 2008, consisted of a portable building situated near a large dirt parking lot which was used to perform inspections on commercial motor vehicles pursuant to the above referenced regulatory scheme. *See* Deposition of Ben Strain, attached hereto as Exhibit "A", Page 16, lines 2-17.

3.      MTD officers working the Lordsburg POE perform a variety of safety inspections on commercial motor vehicles and their drivers which range in level from Level I to Level III. *See* Exhibit "A" at Page 23, lines 9-13.

4.      A Level I inspection is a full inspection of the truck, trailer, cargo, and credentials

---

[1] Defendants are aware that the Court is generally familiar with the POE's operated in New Mexico by MTD. *See United States v. Michael*, 2007 U.S. Dist. LEXIS 67951 (D.N.M. 2007).

ofthe driver.  *See* Exhibit "A" at Page 23, lines 14-17.

     5.     A Level II inspection is an inspection of the truck, trailer, cargo, and credentials, except the brakes and undercarriage of the CMV are not inspected.  *See* Exhibit A at page 23, lines18-21.

     6.     A Level III inspection is a credential inspection and a cargo verification. *See Id.* at Page 24, lines 8-10.

     7.     MTD officers and inspectors stationed at the Lordsburg Port of Entry are scheduled with regard to the levels of inspections they are to conduct; this schedule can be altered by dispatch calls and assignments from supervisors.  *See Id.* at Page 48, lines 5-23.

     8.     The decision with regard to whether a certain CMV will be inspected is made as the CMV is traveling down the driveway towards the portable booth, or prior to the time at which it reaches the window where an officer  inspector stands. *See Id.* at Page 34, lines 16-25;  Page 35, line 19 - Page 36, line 15.

     9.     The policy of selecting vehicles for inspection prior to reaching the window at the POE is pursuant to a directive from MTD supervisory staff at the Lordsburg POE.  *See Id.* at Page 36, line 20 - Page 37, line 19.

     10.     MTD officers, including Officer Strain, receive training with regard to racial profiling. *See Id.* at Page 11, line 9 through Page 12, line 20.

     11.     The Department of Public Safety has a policy prohibiting racial profiling on file, which has been in place since 2002. *See* Defendant's Responses to Plaintiff's First Set of Requests for Production, Request for Production No. 20, OPR:27, Attached hereto as Exhibit B.

     12.     On August 15, 2008, Curtis Blackwell arrived at the Lordsburg POE. *See*

Plaintiff's First Amended Complaint at ¶ 13.  Officer Strain decided to perform a Level II inspection on Mr. Blackwell's commercial motor vehicle.  This decision was made before Officer Srain was able to ascertain Plaintiff's race or ethnicity.  *See* Exhibit A at Page 76, lines 2-8.

13.     Officer Strain noticed a log book violation in Plaintiff's log book, but asked Plaintiff to correct the entry rather than issuing a citation for this violation.  *See* Exhibit A at Page 78, lines 8-18.

14.     During Officer Strain's inspection of Plaintiff's CMV, Officer Strain asked Plaintiff if Plaintiff had alcohol in his CMV; Plaintiff responded that he did.  *See* Exhibit A at Page 82, lines 8-12.

15.     Officer Strain discovered beer and gin in Plaintiff's CMV.  *See* Exhibit A at Page 84, lines 20-24.

16.     Possession of alcohol within a commercial motor vehicle where such alcohol is not part of a manifest or bill of lading is a violation of federal transportation regulations adopted by the State of New Mexico.  *See Id.* at Page 85, lines 17-24; Plaintiff's Response to Defendants' First Request for Admission, attached hereto as Exhibit "C".

17.     Possession of alcohol in a CMV is a violation which requires a mandatory twenty-four (24) hour out-of-service penalty.  *See* Exhibit A at Page 85, line 25 - Page 86, line 1; Exhibit "B".

18.     Although Plaintiff was unaware on August 15, 2008, that possession of alcohol in a CMV was a violation of law, Plaintiff does not dispute this fact, or that Officer Strain was required to place him out of service.  *See* Exhibit B; *See* also Deposition of Curtis Blackwell, attached hereto as Exhibit D, at page 68 lines 17-21; page 89, lines 19-22; page 90 lines 2-3.

19.     When Officer Strain informed Plaintiff that possession of alcohol in a

commercial motor vehicle was a mandatory out-of-service violation, Plaintiff began calling Officer Strain a racist and stated that Officer Strain would not have placed him out-of-service if he were not black. *See* Exhibit A at Page 86, lines 13-19.

20.    Officer Strain issued a citation to Plaintiff for possession of alcohol in a commercial motor vehicle, which contained a penalty assessment of $250.00. *See* Exhibit "A" at Page 90, lines 5-12.

21.    With regard to the citation, Officer Strain explained to Mr. Blackwell that he had two (2) options: (1) either pay the $250.00 penalty assessment within thirty (30) days, or (2) contact Magistrate Court within thirty (30) days to schedule a court appearance. *See* Exhibit "A" at Page 95, lines 20-25.

22.    Plaintiff agreed to pay the penalty assessment with regard to the citation. See Exhibit A at Page 96, line 25 - Page 97, line 2. Officer Strain also placed Plaintiff out-of-service for twenty-four (24) hours. *See Id.* at Page 97, lines 4-6.

23.    Plaintiff testified that he does not know whether Officer Strain was aware of his race or ethnicity prior to his selection of Plaintiff's CMV for inspection. *See* Exhibit D at Page 67, lines 11-21; Page 68, line 22-Page 69, line 3; Page 70, lines 18-23.

24.    Officer Strain did not use any racially derogatory or inappropriate language during his encounter with Plaintiff. *See* Exhibit D at Page 61, line 22 - Page 62, line 2.

## ARGUMENT AND AUTHORITIES

Plaintiff contends that Officer Strain's actions in selecting his vehicle for inspection issuing him a citation and placing him out-of-service upon discovering alcohol in his commercial motor vehicle were motivated by Plaintiff's race. However, given the undisputed material facts of this case and the applicable case law, Plaintiff cannot survive summary judgment with regard to his claims.

Likewise, Plaintiff's claims against the remaining individual Defendants as well as the agency Defendants fail as a matter of law.  As such, Defendants request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's First Amended Complaint.

### A.  Summary Judgment in General

Pursuant to Rule 56 (C) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavit shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56 (C)(2).  Upon the proper showing by the moving party, the nonmoving party must designate specific facts showing that there is a genuine issue for trial.  See *Vitkus v. Beatrice Co.*, 11 F.3d  1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set for specific facts showing that there is a genuine issue for trial as to those dispositive matters forth which it carries the burden or proof".)  The nonmoving party cannot make this showing by resting on ignorance of facts, or speculation. *Conaway v. Smith*, 853 F. 2d. 789, 794 (10th Cir. 1988).

### B.  Qualified Immunity Standard

Qualified immunity recognizes the "need to protect officials who are required to exercise at their discretion in the related public interest in encouraging vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). As such, qualified immunity shields government officials from liability where "their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known". *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).  When a Defendant asserts a qualified immunity defense at the summary judgment stage, the responsibility shifts to the Plaintiff to meet a "heavy two part burden". *Medina v. Cram*, 252

F. 3d 1124, 1128 (10th Cir. 2001). This requires that the Plaintiff show (1) that the Defendant's actions violated his or her constitutional or statutory rights, and (2) that the right was clearly established at the time of the alleged violation. See *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F. 3d 1323, 1327 (10th Cir. 2007).

The analysis of the second prong requires that the Court analyze whether a right was sufficiently clear that a reasonable officer in the Defendant's shoes would understand that what he or she did violated that right. See *Id.* at 1327. After *Pearson v. Callahan*, the Court is free to exercise its discretion in determining which prong of the qualified immunity analysis should be addressed first on a case by case basis. See *Pearson*, 129 S. Ct. at 818.

**C. Racial Profiling or Selective Enforcement**

To demonstrate a violation of the equal protection clause requires that Plaintiff prove both discriminatory effect and discriminatory intent on the part of the Defendants. See *United States v. James*, 257 F.3d. 1173, 1178 (10th Cir. 2001). Simply stated, a Plaintiff "challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and that their actions had a discriminatory effect." *Marshall v. Columbia Lea Reg'l. Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

In order to meet his burden or proof with regard to the discriminatory effect element of this claim, Plaintiff must "make a credible showing that a similarly situated individual of another race could have been, but was not, [stopped or] arrested . . . for the offense for which the Defendant was [stopped or] arrested." *James* 257, F.3d at 1179. Likewise, proof of the discriminatory purpose or intent element requires a showing that discriminatory intent was a "motivating factor in the decision" to enforce a law against Plaintiff. *See Marshall*, 345 F.3d at 1160.

The authority regarding such claims is clear that this burden of proof is "a demanding one". See *United States v. Armstrong,* 517 U.S. 456, 463, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). In *Armstrong*, the Supreme Court recognized this demanding standard of proof because such claims undisputedly involve judicial interference of law enforcement discretion. See *Id.* at 463. There is also a strong suggestion within the Tenth Circuit that a Plaintiff alleging racial profiling must demonstrate that the officer knew the individual's race or skin color before deciding to stop or detain him, and that his decision was motivated in part by the individual's race or skin color. *See United States v. Mercado-Nava,* 486 F.Supp. 2d 1271, 1274 (D. Kan. 2007); *United States v. Aliperti*, 2002 U.S. Dist. LEXIS 13469 (D. Kan. 2002); *United States v. Villanueva*, 157 F.2d. 1184, 1190 (Dist. Kan. 2001); *United States v. Rios-Pinela*, 2006 U.S. Dist. LEXIS 67686 (Dist. Kan. 2006).

While statistics and circumstantial evidence may be used to create an inference of discriminatory effect, they are rarely, if ever, sufficient to establish discriminatory intent. *See United States v. Duque-Nava*, 315 F.Supp. 2d 1161,1162 (Dist. Kan. 2004). This is due to the fact that discriminatory intent implies more than awareness of consequences; but implies that a law enforcement officer selected a particular course of action at least in part because of, rather than of, its adverse effects on an identifiable group. *See Id.* at 1160-1161.

Finally, and crucial to this case, "proof of an officer's knowledge of a driver's race, and intent to discriminate against the driver because of his race can rarely, if ever, be shown". *See United States v. Alcaraz-Arellano*, 302 F.Supp. 2d 1217, 1234 (Dist. Kan. 2004).

### D. Defendant Has Failed to Meet His Burden of Proof On Any of the Elements of His Claim of Racial Profiling Against Officer Strain

After reviewing the above case law as it applies to the undisputed material facts of this case, it is clear that Plaintiff has failed to establish a single element of a claim for racial profiling as

against Officer Strain.  It is undisputed that Officer Strain was not aware of Plaintiff's race prior to his decision to inspect Plaintiff's CMV; even Plaintiff readily admits this.  *See* Statement of Undisputed Material Facts ("SUMF") at ¶12,23.  Thus, Officer Strains decision cannot be said to have been based in wholly or in part (or at all) on Plaintiff's race.  Plaintiff's claim in this regard fails.  *See Alcaraz-Arellano*, at 302 F.Supp. 2d at 1234;  *Duque-Nava*, 315 F.Supp. 2d at1161.

Neither do the undisputed material facts reflect any discriminatory intent, actions, language, or other behavior on the part of Officer Strain with regard to Plaintiff.  *See* SUMF ¶24.  Rather, the undisputed material facts demonstrate that Officer Strain simply conducted an enforcement action against Plaintiff. *See* SUMF generally ¶ .  Plaintiff's unhappiness with the result of this action does not translate to support a claim of racial profiling against Officer Strain.

Finally, Plaintiff has utterly failed to demonstrate that Officer Strain enforced the law against him differently than he enforced it against similarly situated individuals of other races.  Plaintiff was required to demonstrate that Officer Strain selects African-American drivers for inspection and issues alcohol violation citations at a higher rate or percentage than he does for similarly situated individuals of other races. Indeed, Plaintiff admits the law required Officer Strain to cite and place him out of service.  *See* SUMF ¶18.  Plaintiff has failed to provide any evidence to the contrary.

Even if Plaintiff was able to show discriminatory effect, he has completely failed to produce any evidence regarding a showing of discriminatory intent or purpose.  Such as showing would be insufficient to even allow for further discovery in a criminal case in the suppression context; it certainly cannot form the basis for liability pursuant to Section 1983.  As such, summary judgment with regard to Plaintiff's racial profiling claim against Officer Strain is appropriate and should be granted.  *See Starr v. Downs*, 271 Fed. Appx.746, 749 (10th Cir. 2008).

It is clear that Plaintiff has failed to sustain his burden of demonstrating that Officer Strain's actions constituted a violation of Plaintiff's rights. As such, Plaintiff's claim fails with regard to the first prong of the qualified immunity analysis. Assuming for arguments sake that Plaintiff was able to support his allegations of a constitutional violation, Officer Strain's actions in conducting enforcement of federal and state laws that Plaintiff admitted to violating certainly did not violate clearly established law that existed in the Tenth Circuit in August, 2008. As such, Officer Strain is entitled to qualified immunity with regard to Plaintiff's claims against him.

**E. Plaintiff's Claims Against the Remaining Individual Defendants Also Fail**

The remaining individual Defendants are entitled to qualified immunity where Plaintiff has failed to state a claim against Officer Strain regarding racial profiling or selective enforcement. Plaintiff has alleged that the remaining individual Defendants failed to properly discipline, train, or supervise Officer Strain to prevent racial profiling. Plaintiff has failed to allege or demonstrate the requisite personal participation by any of the remaining individual Defendants; nor is it clear that such a claim could, even if true, constitute a violation of the equal protection clause. *See Ross v. Myers*, 2009 U.S. Dist. LEXIS 6510, *17 (W.D. Okla. 2009). Plaintiff must demonstrate an affirmative link between the individual Defendants and the alleged constitutional deprivation. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Specifically, Plaintiff was required to demonstrate that the individual Defendants acquiesced in the violation through "personal participation", "exercise of control or direction" or "failure to supervise" *See id.* at 1302. This Plaintiff cannot do. None of the individual Defendants is even alleged to have participated in the alleged violation, and the undisputed facts show Officer Strain was trained regarding racial profiling and subject to a policy prohibiting such conduct. *See* SUMF at ¶10,11. As such, summary judgment is proper.

**F.  Plaintiffs State Law Claims Against Defendants Fail As Matter of Law**

For the reasons argued above, Plaintiff's state law claims must also fail.

## CONCLUSION

WHEREFORE, for the above stated reasons, Defendants request an Order from this Court dismissing Plaintiff's claims.

Respectfully Submitted By:

SANDENAW LAW FIRM P.C.

_____/s/ Cody R. Rogers_____
T. A. Sandenaw, Jr.
Cody R. Rogers
2951 Roadrunner Parkway
Las Cruces, New Mexico 88011
575-522-7500
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2010, I filed the forgoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Michael W. Lilley
Lilley Law Offices
1014 S. Main
Las Cruces, NM 88005
(575) 524-7809
(575) 526-2462 (fax)
lilley@zianet.com

Michael L. Stout
Law Offices of Michael Stout
910 Lake Tahoe St.
Las Cruces, NM 88007
(575) 524-1471
(575) 647-0408 (fax)
mlstout@nm.net

George Bach
Brendan Egan
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 243-0046
(505) 266-5916 (fax)
gbach@aclu-nm.org

_____ /s/ Cody R. Rogers_____
Cody R. Rogers