IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CURTIS BLACKWELL,

   Plaintiff,

v.                CV 09-0377 MCA/WPL

JOHN DENKO, FORREST SMITH,
TIM LABIER, and BEN STRAIN,
Individually and in Their Official
Capacities, and STATE OF NEW
MEXICO, ex rel. Department of
Public Safety–Motor Transportation
Division, and Taxation and Revenue
Department–Motor Vehicle Division,

   Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

   The issue before me is whether certain documents are privileged attorney work-product. On July 26, 2010, Plaintiff Curtis Blackwell filed a motion to compel. (Doc. 74.) Blackwell seeks an order requiring Defendants to produce an Internal Affairs investigation and all resulting documents. *Id.* The parties agree that the New Mexico Department of Public Safety (hereinafter "DPS") conducted the investigation in response to a complaint submitted by Blackwell against Officer Ben Strain, but they dispute what prompted the investigation. (Doc. 74; Doc. 80; Doc. 89.)

   Defendants assert that the Office of Legal Affairs within DPS initiated the investigation after receiving a Tort Claims Notice from Blackwell. (Doc. 80 at 3; Doc. 80 Ex. F.) Blackwell contends that Defendant Colonel Forrest Smith (Ret.) testified during a deposition that he forwarded Blackwell's complaint to Internal Affairs for an investigation, and not in anticipation of litigation. (Doc. 74 at 2; Doc. 74 Ex. 1 at 6.) Colonel Smith testified that he did this after receiving the results

of an administrative inquiry into Blackwell's complaint, which had been conducted by Major J.J. Salazar. (Doc. 74 Ex. 1 at 6.) Colonel Smith determined that an Internal Affairs investigation was in order because: (1) Blackwell alleged racial profiling; (2) Officer Strain's audio recording device was not working during his encounter with Blackwell; and (3) Colonel Smith felt that Major Salazar had not followed his directions for conducting the inquiry. *Id.*

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Courts have recognized this type of core material as "opinion" work product, which some courts have held to be absolutely privileged. *In re Qwest Commc'ns. Int'l*, 450 F.3d 1179, 1186 (10th Cir. 2006) (discussing the holdings of other courts but not joining either side); *see also* FED R. CIV. P. 26(b)(3)(B) (requiring that courts "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 n.12 (10th Cir. 1998) (noting a circuit split as to whether opinion work-product should receive absolute protection). However, Defendants have not argued that the documents are opinion work-product and instead assert only that the requested documents were created in anticipation of litigation. (*See* Doc. 80 at 4.)

The Defendants' arguments raise the issue of "fact" work product, or non-opinion work product, and the rules controlling discovery of this material are contained in Rule 26(b)(3)(A). *See Trujillo v. Bd. of Educ.*, No. CIV 02-1146 JB/LFG, 2007 U.S. Dist. LEXIS 33919, at *16 (D.N.M. Mar. 12, 2007). This section currently provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives (including the other party's attorney, consultant, surety,

indemnitor, insurer, or agent)." FED R. CIV. P. 26(b)(3)(A). However, materials that are prepared in anticipation of litigation are still subject to discovery if: (1) they meet the relevancy standards of Rule 26(b)(1), and (2) "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* at 26(b)(3)(A)(i-ii). Alternatively, parties can also waive work-product protection by producing otherwise privileged material during discovery, *In re Qwest*, 450 F.3d at 1186 (citation omitted), or by using their work-product as substantive evidence. *Frontier Ref.*, 136 F.3d at 704 ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.") (citations omitted).

The Sixth Circuit has consolidated these principles into a list of sequential steps for courts to follow when a party claims that materials have been prepared in anticipation of litigation. *See Toledo Edison Co. v. G. A. Tech., Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988), *abrogated in part by Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713-14 (6th Cir. 2006) (noting a subsequent change in the Rules of Civil Procedure regarding the discovery of opinion work-product provided to testifying experts). The steps relevant to this case are: (1) the party seeking discovery must first show that the requested materials are relevant, as defined by Rule 26(b)(1); (2) the party opposing discovery then bears the burden of showing whether the materials were prepared in anticipation of litigation, which the other party may controvert; and (3) if the party opposing discovery meets this burden, the court must determine whether the other party has nonetheless shown a substantial need for the materials and that it cannot obtain their substantial equivalent without undue hardship. *Id.* at 339-40.

In this case, the documents sought by Plaintiff are the Internal Affairs investigation of his

own citizen complaint against Officer Strain and any resulting memoranda. (Doc. 74 at 7.) These documents clearly meet the relevancy requirement in Rule 26(b)(1), and Blackwell has satisfied the first requirement. The Defendants argue that Plaintiff has failed to meet his burden under the third step of this analysis–to show that he has a substantial need for the materials–and Blackwell concedes this fact. (Doc. 80 at 7-8; Doc. 89 at 5.) However, Plaintiff correctly notes that he does not have to demonstrate a substantial need if the court determines that the materials were not prepared in anticipation of litigation. (Doc. 89 at 5.) This motion therefore turns on the second step of analysis listed in *Toledo Edison*: whether Defendants have met their burden of showing that the requested documents were prepared in anticipation of litigation or trial. 847 F.2d at 339.

It is well established that "[t]he party asserting work product has the burden of showing the applicability of the doctrine." *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998) (citing *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984)). The Sixth Circuit has explained that a party may satisfy the burden of showing anticipation of litigation "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories . . . ." *United States v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) (quoting *Toledo Edison*, 847 F.2d at 339). However, this showing "can be opposed or controverted in the same manner." *Id.* (quoting *Toledo Edison*, 847 F.2d at 339). Work-product protection fails when the "only basis for the claim is an affidavit containing conclusory statement[s]." *Id.* (citations omitted) (internal quotation marks omitted). On the other hand, the party claiming work-product protection meets its burden when "an 'undisputed affidavit . . . is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial . . . .'" *Id.* (quoting *Toledo Edison*, 847 F.2d at 339).

Here, Defendants have submitted an Affidavit of Darlene Montoya, an employee within

4

DPS's Office of Legal Affairs.  (Doc. 80 Ex. F.)  The Affidavit describes the course of events that preceded the Internal Affairs investigation and does more than simply make conclusory statements about action in anticipation of litigation.  *Id.*  However, Blackwell has controverted Montoya's Affidavit with the deposition testimony of Defendant Colonel Smith.  (Doc. 89 at 2-3; Doc. 74 Ex. 1 at 6.)  Plaintiff has also presented deposition testimony of Defendant John Denko, which allegedly "under[mines]" assertions within Montoya's Affidavit.  (Doc. 89 at 3; Doc. 89 Ex. 1.)  Although Montoya's Affidavit is specific and detailed, it is also disputed.  I must therefore conduct further analysis.

The Tenth Circuit has not delineated factors for courts to consider when determining whether materials were prepared in anticipation of litigation, but this district has compiled several factors from other circuits.  *See Trujillo v. Bd. of Educ.*, No. CIV 02-1146 JB/LFG, 2007 U.S. Dist. LEXIS 33919, at *20-21 (D.N.M. Mar. 12, 2007).   These include:

> (i) [W]hether similar documents are routinely prepared in similar situations in the regular course of business; (ii) whether [the documents] were prepared before a lawsuit was filed; (iii) whether they were prepared by or at the direction of an attorney who would actually try the case if litigation should develop; (iv) whether the reports are impartial as between the parties, i.e., whether they were designed to be adversarial or investigative in nature; (v) whether the documents fix the opposing party's theory of the case to be used at trial; and (vi) whether the reports are solely the result of the opposing party's own investigative work or whether they also contain evidence the requesting party submitted.

*Id.* at *20-21 (internal citations omitted).  This district also explained that:

> If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation *for its own purposes*, the resulting investigative report is produceable in civil pre-trial discovery. . . . A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business.

*Id.* at *21 (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982) (emphasis added)).  Finally, this district found that "in order to establish work production protection

for a document, a discovery opponent must show that the primary motivating purpose behind the creation of a document . . . must be to aid in possible future litigation." *Id.* at *18-19 (quoting *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001)) (internal quotation marks omitted).

I agree with Plaintiff that factors (iv), (v) and (vi) are difficult to evaluate on the materials before me.  Furthermore, factor (ii) does not favor either side because although the materials were prepared soon before a lawsuit was filed, Plaintiff argues that Defendants prepared the materials for their own purposes, in the ordinary course of business, and not in anticipation of the lawsuit.  (Doc. 89 at 2-3.)  I find that the remaining factors, (i) and (iii), weigh in favor of Plaintiff.

Regarding factor (iii), the parties agree that Chief Faron W. Segotta, who is not an attorney, conducted the investigation.  (*See* Doc. 80 Ex. F at 2; Doc. 74 Ex. 1 at 7.)  Although work-product protection "also applies to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating the documents," *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (citing *Nobles*, 422 U.S. at 238-39), Defendants have not presented evidence establishing that Segotta was the agent of an attorney.  Defendants certainly have not presented evidence indicating that the investigation was "prepared by or at the direction of an attorney who would actually try the case if litigation should develop," and it was their burden to do so.  *Trujillo*, 2007 U.S. Dist. LEXIS 33919, at *20.  I am unconvinced by Montoya's bare assertion that "[a]t all times material, the Standards Bureau/Internal Affairs investigation was conducted at the request of the Office of Legal Affairs."  (Doc. 80 Ex. F at 2)

Factor (i) also supports Plaintiff.  John Denko, a defendant in this case, has testified in his deposition about DPS's regular practice of conducting Internal Affairs investigations of citizen complaints when initial administrative inquiries produce certain outcomes.  (Doc. 89 Ex. 1 at 3 ("[A]nytime there is a complaint, it is initially looked into to see if there is at least a germ of

substance.  And if we find anything at all, then it goes into an internal affairs investigation.").) Colonel Smith, another defendant, has testified that he often forwarded administrative inquiries to Internal Affairs, corroborating Denko's description of DPS procedures.  (Doc. 74 Ex. 1 at 6 ("Quite I [sic] few times I would send it over to administrative investigation, regardless of what they said in their report . . . .").)  Denko and Colonel Smith's testimony in tandem presents strong evidence that DPS routinely conducts Internal Affairs investigations of citizen complaints "for its own purposes," in the ordinary course of business, to ensure that its officers are following the law. *Trujillo*, 2007 U.S. Dist. LEXIS 33919, at *21.

I find, however, that by far the most compelling evidence is Colonel Smith's deposition testimony that he, and not the Office of Legal Affairs, was responsible for the Internal Affairs investigation of Mr. Blackwell's complaint.  (Doc. 74 Ex. 1 at 6 ("I reviewed it.  And at that point, I made a determination that it should go as an administrative investigation to Internal Affairs.").) Equally significant is Defendants' failure to provide an explanation for Colonel Smith's contradictory testimony.  Colonel Smith provides detailed reasons for why he forwarded Major Salazar's administrative inquiry to Internal Affairs, as he testifies he has done with other inquiries on many occasions.  (*See* Doc. 74 Ex. 1 at 6.)  Defendants do not refer to this testimony and only counter Colonel Smith's assertions with a third party affidavit.  (Doc. 80 Ex. F.)  Furthermore, Defendants also list factual background in their response brief that is not supported by Montoya's affidavit.  Montoya does not provide a date for when the Office of Legal Affairs notified officers that an investigation of Mr. Blackwell's Tort Claim Notice would be conducted by Internal Affairs, yet the Defendants' response lists this date as November 3, 2008.  (*See* Ex. 80 at 3 (citing to Montoya's Affidavit).)

I find the testimony of Colonel Smith more credible than Defendants' third party Affidavit.

I also find that the Affidavit does not preclude Colonel Smith's version of the story.  Montoya's affidavit and the other exhibits in Defendants' response establish that the document containing the results of Major Salazar's administrative inquiry is dated October 16, 2008.  (Doc. 74 Ex. C.) Although Blackwell's Tort Claim Notice and a letter from his attorney announcing the Notice are also dated October 16, 2008, [Doc. 80 Ex. D, E], Montoya testified that the Office of Legal Affairs did not receive the Notice until after October 24, 2008 and "no later than October 30, 2008 . . . ." (Doc. 80 Ex. F at 1-2.)  It was not until this time, according to Montoya, that the Office of Legal Affairs began to gather documents and commenced an Internal Affairs investigation of Mr. Blackwell's Tort Claim Notice.  (Doc. 80 Ex. F at 2.)  This date range provides ample time for Colonel Smith to initiate the Internal Affairs investigation, as he says he did, before the Office of Legal Affairs received Blackwell's Tort Claim Notice.

While it is true that Defendants could not have completed the investigation before receiving the Notice, "work product doctrine does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*, 318 F.3d 379, 384-85 (2d. Cir. 2003).  In other words, documents pertaining to an investigation that was conducted in the regular course of business are not transformed into privileged work-product, created "in anticipation of litigation," merely because litigation becomes likely after the investigation has started.

Defendants had the burden of showing that the "primary motivating purpose" behind the creation of the investigation documents was to aid in possible future litigation. *Trujillo*, 2007 U.S. Dist. LEXIS 33919, at *18-19. Defendants have not explained or adequately countered Colonel Smith's testimony and I find that he initiated the Internal Affairs investigation in the regular course

of business. In light of this finding and my analysis of the *Trujillo* factors, I conclude that Defendants have not met their burden. Therefore, the materials are not privileged work-product and must be disclosed to Plaintiff.

As a result, it is immaterial that Plaintiff has not shown a substantial need for the requested materials. The parties' arguments regarding waiver are also irrelevant, because I find that the requested materials are not privileged work-product. (*See* Doc. 74 at 6; Doc. 80 at 5-6.) Defendants' promise that they have "no plans and no demonstrated intent to waive . . . protection by using the Internal Affairs Investigation documents" does not matter because they have no protection to waive. (Doc. 80 at 6.)

IT IS THEREFORE ORDERED that Plaintiff's motion to compel is GRANTED. Defendants must produce the Internal Affairs investigation regarding Blackwell's complaint and all resulting documents, pursuant to Requests No. 9 and 10 in Blackwell's requests for production. (Doc. 74 at 1-2.)

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE