IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**CURTIS BLACKWELL**,

      Plaintiff,

vs.                                                                             No. CV 09-377 MCA/WPL

**BEN STRAIN**, individually and in his official
capacity,

      Defendant.

## **ORDER**

This case is before the Court upon Plaintiff's *Motion for District Court Certification of Defendant Strain's Interlocutory Appeal as Frivolous*. [Doc. 195]  The Court has considered Plaintiff's motion, the Response thereto filed by Defendant, the record in this case, the applicable law, and is otherwise fully advised in the premises.  The Court conducted a hearing on the Motion on April 18, 2011.   The Motion is denied.

**Procedural History**

This case arises out of Plaintiff's encounter with New Mexico Department of Public Safety, Motor Transportation Division ("MTD") Officer Ben Strain at the Lordsburg, New Mexico Port of Entry on August 15, 2008.  Plaintiff Curtis Blackwell is African American.  At the time, Plaintiff was driving a tractor-trailer eastward on I-10.  New Mexico law requires all commercial motor carrier vehicles to stop at designated ports of entry. NMSA 1978, § 65-1-11.  MTD officers may inspect commercial vehicles and accompanying documentation to determine

whether the vehicles, drivers, and cargo are in compliance with state law. Section 65-5-1.  New Mexico has adopted detailed federal safety regulations applicable to commercial motor carriers.  18 N.M.A.C. 2.3.9 to -2.3.17.  In addition, New Mexico has adopted inspection criteria promulgated by the Commercial Vehicle Safety Alliance.  *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1209 (10th Cir. 2001).  There are three levels of inspections, with a Level I inspection being the most thorough.  *Id.*  At the time of the events at issue in this case, the Lordsburg Port of Entry consisted of  a portable building located near a large dirt parking lot. Officer Strain directed Plaintiff to pull his tractor-trailer out of the line of vehicles waiting to pass on through the port of entry.  Officer Strain denies that he was aware of Plaintiff's race when he selected Plaintiff's tractor-trailer for an inspection.  Officer Strain elected to perform a Level II inspection of Plaintiff's tractor-trailer.  During the course of the inspection, Officer Strain discovered an unopened bottle of gin and an unopened pack of beer in a storage compartment.  Possession of alcohol under these circumstances was a violation of federal transportation regulations adopted by the State of New Mexico. 18 N.M.A.C. 2.3.12 (adopting 49 C.F.R. Part 392);  49 C.F.R. § 392.5(a)(3).  As a mandatory penalty for the violation, Officer Strain ordered Plaintiff to remove his tractor-trailer from service for twenty-four hours. 49 C.F.R. § 392.5(c).  Officer Strain also served Plaintiff with a $250 penalty assessment.  Plaintiff alleges that he was subjected to racially selective law enforcement by Officer Strain.[1]

On March 24, 2011, the Court entered a Memorandum Opinion and Order [Doc. 176]

---

[1]Plaintiff is claiming that if Officer Strain had treated Plaintiff the same as the white truckers whose vehicles passed through the POE on August 15, 2008,  Officer Strain would not have had occasion to discover the alcohol stored in the compartment of Plaintiff's truck, he wold not have been cited, and he would have been allowed to pass through.

granting in part and denying in part Defendants' motion for summary judgment. More particularly, the Court denied summary judgment with respect to Plaintiff's claim that Officer Strain subjected Plaintiff to racially selective law enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment. In denying summary judgment, the Court rejected Officer Strain's claim of qualified immunity, concluding that Plaintiff has satisfied both prongs of the two-part standard set out in *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 779-80 (10th Cir. 1993). With respect to the first prong, the Court, applying a preponderance-of-the-evidence burden of proof, found that Plaintiff's evidence was sufficient to establish genuine issues of material fact as to the elements of a claim that Officer Strain had violated Plaintiff's right to equal protection of the laws. The Court distinguished Plaintiff's case from *United States v. Armstrong*, 517 U.S. 456 (1996), reasoning that *Armstrong* involved a criminal prosecution, whereas the present case is a civil case. With respect to the second prong, the Court concluded that in view of *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157 (10th Cir. 2003), Plaintiff's right not to be subjected to racially-selective law enforcement activity was clearly established as of the date of Plaintiff's encounter with Officer Strain. [Doc. 176 at 12]

Defendant Strain filed a Motion for Partial Reconsideration, arguing that (1) the Court had incorrectly determined that there was a genuine issue of fact as to Strain's knowledge of Plaintiff's race at the time of the his decision to subject Plaintiff to a Level 2 inspection; (2) the Court had applied the wrong evidentiary standard in evaluating the sufficiency of Plaintiff's evidence; (3) the Court had misapprehended Plaintiff's claims against Officer Strain; (4) the Court misapprehended the law governing the use of statistical evidence to prove discriminatory purpose; (5) the Court overlooked evidence negating proximate cause; and (6) the Court erroneously concluded that the governing law was clearly established at the time of Plaintiff's

3

encounter with Officer Strain. On April 13, 2011, the Court summarily denied Defendant's Motion for Partial Reconsideration. [Doc. 191]

On April 13, following the Court's denial of Defendant's Motion for Partial Reconsideration, Defendant filed a notice of appeal from the Court's March 24, 2011 Memorandum Opinion and Order and the Court's Order denying Defendant's Motion for Partial Reconsideration. Plaintiff's notice of appeal asserts that "[t]his appeal is brought pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), in which the Supreme Court recognized the right to file an interlocutory appeal based on the denial of qualified immunity." Later on April 13, 2011, Plaintiff filed his motion seeking the Court's certification that Defendant Strain's appeal is frivolous. [Doc. 195]

In *Mitchell*, the Court held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 530. "Because the district court is divested of jurisdiction to proceed to trial by the filing of a notice of interlocutory appeal raising a . . . qualified immunity issue, there is the risk that such interlocutory appeals will be subject to abuse." *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990). The potential misuse of interlocutory review and the divestiture of the district court's jurisdiction may be avoided if the district court "(1) after a hearing and, (2) for substantial reasons given, (3) [finds] the claim to be frivolous." *Id.* (Internal quotation marks and citation omitted).

**Evidence Sufficiency**

In *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995), the Court held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." This is because "[m]any constitutional tort cases, . . . involve factual controversies about, for example, intent[,]" which are most appropriately resolved at the trial level. *Id.* at 315.

However, "if a defendant's appeal of the denial of a motion for summary judgment is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's summary judgment ruling is immediately appealable." *Johnson v. Martin*, 195 F.3d 1208, 1214 (10th Cir. 1999). Under these circumstances, "a qualified immunity appeal raises the kind of abstract legal issues that are separate from the factual issues that may arise at trial." *Id.*

In its Memorandum Opinion and Order, this court found that genuine issues of material fact exist with respect to whether "Officer Strain was motivated by a racially impermissible purpose when he subjected Plaintiff's vehicle to a Level II inspection." [Doc. 176, p. 8] First, the evidence of whether Officer Strain was able to determine the race of a driver prior to selecting a truck for inspection was disputed. On the day in question, the proffered evidence established that three of the seven trucks inspected (43%) were driven by black drivers, a number well in excess of the representation of black drivers (14.6%) in the population passing through the POE. Additionally, Plaintiff proffered evidence suggesting that Officer Strain

5

arrests black drivers at a rate that is twice their representation in the population of truckers passing through the POE.  Plaintiff's evidence further suggested that, when Officer Strain was unable to ascertain a driver's race prior to initiating law enforcement activity, then the number of black drivers arrested closely correlated with their representation in the population of truckers passing through the POE.  On the basis of this evidence, the jury reasonably could infer that Officer Strain was motivated by a racially impermissible purpose when he chose Plaintiff's truck for inspection on August 15, 2008.

Once a truck has been chosen for inspection, the MTD officer has an opportunity to observe the driver's general appearance and ascertain the driver's race.  On August 15, 2008, *every one* of the black truckers chosen for inspection by Officer Strain were subjected to the more intrusive Level II inspection, whereas *every one* of the white drivers were subjected to the less intrusive Level III inspection.  This proffered evidence is consistent with data suggesting that black truckers report delays due to inspections and searches more frequently than truckers who are not black.  On the basis of this proffered evidence, the jury reasonably could infer that Officer Strain was motivated by a racially impermissible purpose when he chose to perform a Level II inspection on Plaintiff's vehicle on August 15, 2008.

Genuine issues of material fact exist regarding Officer Strain's purpose and intent in choosing Plaintiff's vehicle for a Level II inspection. If the jury finds Plaintiff's evidence of Officer Strain's racially discriminatory purpose to be credible, then the jury reasonably could find a violation of Plaintiff's right to equal protection of the laws.  *See Marshall*, 345 F.3d at 1168.  Accordingly, I conclude that Defendant's appeal is frivolous to the extent that it seeks

appellate review of this Court's determination regarding the sufficiency of Plaintiff's evidence. *See McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010) (refusing to review the question of the defendant's retaliatory motive on interlocutory appeal because the district court found that genuine issues of material fact existed).

### **Burden of Proof**

The one assertion of error that this Court finds not to be facially frivolous is Defendant's assertion that the Court erred by not imposing a heightened burden of proof on Plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), established that "the inquiry involved in ruling on a motion for summary judgment. . . necessarily implicates the substantive evidentiary standard of proof that would apply at trial on the merits," *id.* at 251.  In close cases such as the present, application of a mere preponderance standard when a heightened standard is required could result in the improper denial of summary judgment on qualified immunity. While the applicable burden of proof is related to evidentiary sufficiency, the question of whether the Court applied the wrong burden of proof in ruling on a claim of qualified immunity arguably is the type of discrete issue of law that is reviewable under *Mitchell*.  As Defendant has pointed out, there are statements in *Marshall* that can be read as calling into question the application of a preponderance of the evidence standard as applied *specifically* to racial profiling claims.

I remain firmly convinced that the applicable standard of proof in this case is that of the preponderance of the evidence.  However, on the one hand our Circuit observed in *Marshall* that "[n]either this Court nor the Supreme Court has set forth the standards of proof needed for a plaintiff to withstand summary judgment in a case of an alleged racially discriminatory stop and

7

arrest by a single officer," and that "[i]n analogous contexts. . . the [Supreme] Court has taken great pains to explain that the standard is a demanding one." 345 F.3rd at 1167. On the other hand, rather than endorsing a heightened burden of proof, these statements may simply be the Tenth Circuit's characterization of the difficulty a plaintiff faces in the typical case in establishing that a law enforcement officer engaged in purposeful racial discrimination. In light of the above, I cannot conclude that Defendant's reading of *Marshall* as having endorsed a heightened burden of proof in racial profiling cases is frivolous.

### CONCLUSION

I decline to certify Defendant's appeal as frivolous. In accordance with this Court's determination, Plaintiff's Motion will be denied. This Court acknowledges that it remains divested of jurisdiction to proceed in this case.

**IT IS THEREFORE HEREBY ORDERED** that Plaintiff's *Motion for District Court Certification of Defendant Strain's Interlocutory Appeal as Frivolous*. [Doc. 195] is **denied.**

So ordered this 18th day of April, 2011.

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE